UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TODD BONDS,
    Plaintiff,

Case No. 1:15-cv-641
Litkovitz, M.J.

vs.

UNIVERSITY OF CINCINNATI
MEDICAL CENTER, et al.,
    Defendants.

**ORDER**

Plaintiff brings this pro se action alleging violations of his rights by defendants the

University of Cincinnati Medical Center (UCMC), UCMC security staff, UCMC security

employee Mike Posey (collectively, "UCMC defendants"), former Kentucky Attorney General

(AG) John William "Jack" Conway, and "Two Unknown Kentucky State Police Officers" (KSP

officers). This matter is before the Court on (1) the UCMC defendants' motion to dismiss the

complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted

(Doc. 130), plaintiff's response in opposition (Doc. 135), and defendants' reply memorandum in

support (Doc. 137); (2) defendant Conway's motion for a protective order (Doc. 132), plaintiff's

response in opposition (Doc. 134), and defendant's reply in support (Doc. 138); (3) plaintiff's

motion to strike defendant's motion for a protective order (Doc. 136) and defendant's response

in opposition (Doc. 139); and (4) plaintiff's motion for leave to file a second amended complaint

(Doc. 143), defendant Conway's response in opposition (Doc. 145), the KSP officers' response

in partial opposition (Doc. 149), and plaintiff's replies in support of the motion (Docs. 146, 150).

## I. Background

Plaintiff was granted leave to proceed *in forma pauperis* and filed the original complaint in this action on October 8, 2015. (Docs. 2, 3). The only defendants named in the original complaint are the UCMC defendants. Plaintiff alleges in the original complaint that on or about September 2, 2015, the UCMC defendants "engaged in several acts" that violated plaintiff's rights under the "'UCMC' Patient Bill of Rights" and worsened his condition, "causing [plaintiff] mental [and] physical anguish." (Doc. 3 at 3). Specifically, plaintiff alleges that the UCMC defendants refused to allow him to participate in his care plan as prescribed by his primary care doctor and refused to call plaintiff by his requested title in violation of the UCMC Patient Bill of Rights. (*Id.*). Plaintiff also alleges that defendant Posey threatened him with physical harm, called him names, and disrespected him "in an attempt to air a 20+ year grievance" between plaintiff and Posey. (*Id.*). Plaintiff seeks injunctive relief in the form of "recertification and enforcement of [the] Patient Bill of Rights" and the termination of Posey, punitive damages totaling at least $5 million, and any other relief specified by the Court. (*Id.* at 4).

Plaintiff sought leave to file an amended complaint on September 21, 2016 (Doc. 65) and submitted a proposed amended complaint on November 21, 2016. (Doc. 72). He sought to add claims, allegations, and six new defendants, including Conway and the KSP officers. The Court granted plaintiff leave to amend the complaint to add the KSP officers and Conway as defendants; a claim of First Amendment retaliation against the KSP officers and Conway as alleged in Counts III and IV of the proposed amended complaint; and a Fourth Amendment claim against the KSP officers for an unreasonable search conducted without probable cause as alleged in Count IV of the proposed amended complaint. (Doc. 75).

The complaint as amended includes allegations that the two KSP officers came into plaintiff's hospital room at UCMC without having jurisdiction in Ohio and "under false pretense." (Doc. 72, p. 3, ¶ 10). Plaintiff alleges that the KSP officers came to UCMC and threatened him at the request of Conway, who was a gubernatorial candidate and Kentucky Attorney General at the time. (*Id.*, ¶ 11). Plaintiff alleges that the KSP officers explained to him that they were sent by the Office of the Attorney General and Conway to talk to plaintiff about his social media postings, in which plaintiff routinely criticized Conway's work and urged black voters not to vote for him. (*Id.*, p. 3, ¶ 11). Plaintiff alleges the KSP officers "intimidated [him] into stopping the publishing of political advice given to black voters on social media and [his] formerly sole-operated Web site www.theoutclause.com." (*Id.*, ¶ 10). Plaintiff alleges his "speech was not a plot to overthrow the government or to break laws, but merely to inform black voters of the machinations of 'Conway' and the '[the Kentucky Office of the Attorney General].'" (*Id.*, p. 4). Plaintiff alleges that the KSP officers made what seemed like a threat to his livelihood and safety by saying 'handles [sic] this or else . . .'" (*Id.*). Plaintiff alleges that the threat caused him to shut down his web site, which was gaining in popularity. (*Id.*).

Plaintiff alleges the KSP officers did not have a warrant for his arrest, they never served a warrant on him, and they were not in pursuit of him. (*Id.*, ¶ 15). Plaintiff contends that while the "uniformed" KSP officer was interrogating him, the plain clothes officer searched under plaintiff's covers and found a shoe. (*Id.*, pp. 3-4; ¶¶ 14, 16). Plaintiff alleges that he experienced a significant spike in his blood pressure and requested to go outside to walk around because his primary care physician had previously advised him to walk around to lower his blood pressure. (*Id.*, p. 4). Plaintiff alleges that while he was outside, defendant Posey "rudely accosted" him by calling him "crazy" and telling him to go back inside, even though plaintiff had permission to

go outside. (*Id.*). Plaintiff asserts that defendant Posey repeated his actions the following day when plaintiff was "participating in his healthcare." (*Id.*). Plaintiff alleges Posey was illegally detaining him in case the Kentucky State Police came back with an actual arrest warrant, which did not happen. (*Id.*).

The Court has previously dismissed several of plaintiff's claims. (Doc. 72). The claims that remain in the case are plaintiff's claims against the UCMC defendants for violating plaintiff's rights under the UCMC Patient Bill of Rights by refusing to allow him to participate in his medical care plan, refusing to call him by his requested title, and threatening him with physical harm, disrespecting him, and calling him names; a First Amendment retaliation claim against the KSP officers and Conway; and a Fourth Amendment claim against the KSP Officers. (Docs. 3, 72). Plaintiff seeks injunctive relief requiring the UCMC defendants to recertify and enforce the UCMC Patient Bill of Rights, terminate Posey, and make a schedule for retaining UCMC surveillance video, and an injunction requiring all defendants to undergo "U.S. Constitution training"; "a finding of guilty on all counts"; $42,000 in compensatory damages against defendants for intimidating and forcing plaintiff to shut down his website; and $15 million in punitive damages. (Doc. 3 at 4; Doc. 72 at 9).

## II. Plaintiff's motion for leave to file a second amended complaint

Plaintiff filed his motion for leave to file a second amended complaint and a proposed second amended complaint on July 19, 2017. (Docs. 143, 143-1). Plaintiff seeks leave to add Benjamin Long, an employee of the Office of the Kentucky Attorney General, to the lawsuit as a new defendant and to substitute Richard St. Blanchard[1] and Danny Caudill for defendants "Two Unknown Kentucky State Police Officers." Plaintiff also requests leave to add a charge of

---

[1] Plaintiff identifies St. Blanchard as "St. Blancard." (Doc. 143-1). The Court will use the correct spelling of St. Blanchard's name.

4

"Intimidation" under Ohio Rev. Code § 2921.03 against St. Blanchard, Caudill, Conway, and Long and to increase his punitive damages request by $3 million. (Doc. 143-1, ¶ 36, p. 10).

Defendants Two Unknown Kentucky State Police Officers do not oppose the substitution of Richard St. Blanchard and Danny Caudill for the previously unidentified KSP officers. (Doc. 149). Defendants oppose plaintiffs' motion in all other respects. The KSP officers oppose plaintiffs' request to amend the complaint to the extent plaintiff seeks to add new factual allegations and a claim for "Intimidation" under Ohio statutory law. They allege that the proposed amendment would unduly prejudice them and would be futile. Defendant Conway opposes plaintiff's motion for leave to amend on the grounds plaintiff allegedly made the motion in bad faith and to delay this case; the amendment would prejudice Conway and Long if he were added as a defendant; and the amendment would be futile because the proposed second amended complaint fails to state a claim to relief. (Doc. 145).

Fed. R. Civ. P. 15(a) governs amendments to the pleadings. A complaint may be amended once as a matter of course within 21 days of service of responsive pleadings. Fed. R. Civ. P. 15(a)(1)(B). If a plaintiff wishes to amend the complaint after the 21 day period has expired, he must obtain consent of the opposing party or leave of the Court. Fed. R. Civ. P. 15(a)(2).

The grant or denial of a motion to amend under Fed. R. Civ. P. 15(a) is within the discretion of the trial court. Leave to amend a complaint should be liberally granted. *Foman v. Davis,* 371 U.S. 178 (1962). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.,* 427 F.3d

996, 1001 (6th Cir. 2005). The test for futility is whether the amended complaint could survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a). In order to be considered valid, the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the alleged actions. *Id.* at 556. While all well-pleaded factual allegations must be accepted as true, the Court does not have to accept legal conclusions that are "couched as" factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The Court must hold pro se pleadings to a less stringent standard than those prepared by attorneys and must liberally construe them when determining whether they fail to state a claim. *See, e.g., Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).

The Court will grant plaintiff leave to substitute St. Blanchard and Caudill for the previously unidentified KSP officers but will deny his motion to amend the complaint a second time in all other respects. Plaintiff waited far too long to request leave to add a new claim, new allegations, and another defendant to the lawsuit. He filed the original complaint on October 8, 2015 (Doc. 3), requested leave to file an amended complaint almost one year later on September

21, 2016 (Doc. 65), and filed the proposed amended complaint on November 21, 2016 (Doc. 72).

Plaintiff then waited until July 19, 2017 to file his motion for leave to amend the complaint a

second time. (Doc. 143). Plaintiff filed his motion on the same day his deposition was taken

(*see* Doc. 142) and just ten days before the discovery deadline expired. (Doc. 125). Plaintiff has

not stated a valid reason for waiting until nearly two years after he filed this lawsuit, just after his

deposition was completed, and shortly before expiration of the discovery deadline to seek to add

a new claim and another defendant to the lawsuit.

Plaintiff indicates that he did not move to add Long as a defendant earlier because the

role Long allegedly played in the violation of his civil rights became clear in discovery. (Doc.

143 at 2). While plaintiff may have learned more detailed information during discovery, the

emails plaintiff attached to his proposed second amended complaint to support his allegations

indicate that plaintiff accused Long of misconduct and threatened to sue him before plaintiff

even filed this lawsuit. (Doc. 143-1, Exhs. A, C). According to the emails, plaintiff met with

Long after plaintiff came to the State Capitol on July 14, 2015 (*Id.*, Exh. D); on his twitter

account some time prior to July 27, 2015, plaintiff accused Long, together with Conway and

other employees of the Kentucky Attorney General's Office, of being involved in a "cover up" at

the Attorney General's Office (*Id.*, Exh. C); and on August 12, 2015, plaintiff sent an email to

Long and other employees of the Attorney General's office advising them that he had filed a

complaint with the United States Attorney General against Long, Conway and another employee

accusing them of preventing plaintiff from reaching Conway by "blocking for" him (*Id.*, Exh. A).

Plaintiff specifically accused Long of giving him a business card with an invalid email address

and "ambush[ing] [plaintiff] at the gates" one month earlier, and he accused another employee of

"blocking for white supremacy." (*Id.*, Exh. A). Plaintiff also stated that after filing the

complaint, he would "pursue other legal remedies [against Long and others], such as a civil suit for failure to provide a service while in office. . . ." (*Id.*). Plaintiff has not offered a valid reason for waiting until July 2017, almost two years after he filed this lawsuit, to attempt to add Long to the case given plaintiff's prior knowledge of Long and plaintiff's threat to sue him. Further, assuming plaintiff could bring a claim for "Intimidation" under Ohio Rev. Code § 2921.03, a felony statute, plaintiff should have been aware of this claim when he filed his previous complaints since the claim does not appear to be based on any new facts.[2] Plaintiff's undue delay in seeking to amend the complaint to add an "Intimidation" claim and Long as a defendant weighs against granting the motion.

In addition, allowing plaintiff to amend the complaint a second time at this late stage in the litigation would create significant prejudice to defendants. The case has been pending for nearly two years, and the discovery deadline has passed. Although plaintiff alleges that adding the new defendants would not require additional discovery, Long would be entitled to an opportunity to conduct full discovery on plaintiff's claims against him if he were added as a defendant. It would be unfair to defendants to further delay this case when plaintiff should have known of the basis for his claim against Long well in advance of expiration of the discovery deadline. *See Duggins v. Steak'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (district court properly denied leave to amend where discovery had closed and the plaintiff was obviously aware of the basis of the claim for many months).

Finally, plaintiff's motion for leave to amend should be denied because the proposed amendment could not withstand a motion to dismiss and is therefore futile. *Rose,* 203 F.3d at

---

[2] Section 2921.03 states: "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the duties of the public servant, party official, attorney, or witness." Ohio Rev. Code. § 2921.03(A). The statute provides that anyone who violates the statute "is guilty of intimidation, a felony of the third degree." Ohio Rev. Code. § 2921.03(B).

421. Plaintiff cannot bring a claim for "Intimidation" against defendants St. Blanchard, Caudill, Conway and Long under Ohio Rev. Code § 2921.03(A) because plaintiff does not allege he is a public servant, party official, attorney or witness for purposes of the statute. Further, § 2921.03(A) is a criminal statute which does not provide for a civil remedy. *Delaney v. Skyline Lodge, Inc.,* 642 N.E.2d 395, 404 (Ohio App. 1st Dist. 1994)*. See also Graham v. Johanns*, No. 2:07-CV-453, 2008 WL 3980870, at *14 (S.D. Ohio Aug. 21, 2008) (noting that Ohio courts have held there is no right to bring a private cause of action under a criminal statute).

Plaintiff's claim against Long for a violation of his civil rights likewise could not withstand a motion to dismiss. Plaintiff alleges that Long took orders from Conway and relayed information to him on "how to handle Plaintiff, a black man whom was acting as a whistleblower about a public agency who used racial epithets toward Plaintiff while he was an employee of the agency"; Long was in contact with the KSP for months in an effort to "entrap" plaintiff, build a case of harassment against him, or otherwise send plaintiff to jail; Long wanted to have plaintiff punished for constantly reminding him of acts of "white supremacy" occurring in the country at the time; Long insulted plaintiff in an internal email by allegedly calling him "unstable" and "delusional"; and Long informed others in his office that a tweet plaintiff posted on Twitter that said, "It has to be done. There is no other alternative," did not contain any context and then provided his own context by allegedly telling investigators that plaintiff "was about to attack employees" of the Attorney General's office, which led to the visit at UCMC from St. Blanchard and Caudill. (Doc. 143, ¶¶ 22-28; Exhs. C, D, E, F). As an initial matter, none of the emails from Long that plaintiff has attached to his complaint refer to plaintiff as "delusional" or include a statement by Long to investigators that plaintiff was about to attack anyone. (*Id.*). Further, plaintiff's factual allegations in the proposed second amended complaint, read in conjunction

with the attached emails and construed in his favor, do not support a finding that Long's intent in sending or sharing communications with other employees in the Kentucky Attorney General's Office was to "entrap," build a case of harassment against, or "punish[]" plaintiff. (Doc. 143, ¶¶ 22, 25) Plaintiff's conclusory allegations and the emails do not permit an inference that Long acted with any other improper motive, and plaintiff's "naked assertion[s]" that Long had an improper motive do not suffice. *Twombly,* 550 U.S. at 557. Because plaintiff has not pled factual allegations sufficient to raise his "right to relief above the speculative level," *Id.* at 555, amending the complaint to add a claim against Long would be futile.

In light of plaintiff's undue delay in seeking leave to amend the complaint a second time, the significant prejudice to defendants that would result if plaintiff's request to amend the complaint were granted at this late juncture, and the futility of the proposed amendment, plaintiff's motion for leave to file a second amended complaint (Doc. 143) is **DENIED**.

### III. The UCMC defendants' motion for judgment on the pleadings

The UCMC defendants move the Court to dismiss plaintiff's claims against them under Fed. R. Civ. P. 12(c), which permits a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial.[3] (Doc. 130). Defendants contend that the complaint must be dismissed because (1) it does not state a claim to relief, and (2) subject matter jurisdiction is lacking under the diversity statute, 28 U.S.C. § 1332(a)(1), because plaintiff's damages do not satisfy the statutory minimum of $75,000. Defendants argue that plaintiff has not stated a claim for breach of contract because the UCMC Patient Bill of Rights is not a contract and, even assuming it were a contract, plaintiff has not alleged facts to show a

---

[3] Defendants filed their motion under Fed. R. Civ. P. 12(b)(6), but they correctly acknowledge in their reply that the motion should have been filed under Fed. R. Civ. P. 12(c) since they filed it after the pleadings were closed. (Doc. 137 at 1, n. 1). The legal standard for adjudicating a Rule 12(c) motion is the same as that for analyzing a Rule 12(b)(6) motion. *Lindsay v. Yates,* 498 F.3d 434, 437 n.5 (6th Cir. 2007); *Reeves v. Shawnee State U.,* No. 1:16-CV-00765, 2017 WL 888603, at *2 (S.D. Ohio Mar. 2, 2017).

breach a contract. (*Id*. at 6). Defendants contend that an alleged violation of the UCMC Patient Bill of Rights does not otherwise state a claim for violation of plaintiff's rights under state or federal law. (*Id.*). Finally, defendants assert that the complaint fails to state a claim to relief against Posey because plaintiff only generally alleges "rudeness or incivility" on Posey's part, which is not actionable under Ohio tort law. (*Id.*, citing *Yeager v. Local Union 20*, 453 N.E.2d 666, 671-72 (Ohio 1983), *abrogated on other gds. by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007)).

Plaintiff opposes defendants' motion on the ground this case presents a federal question over which the Court has original jurisdiction under 28 U.S.C. § 1331. (Doc. 135). Plaintiff alleges UCMC is a federally funded place of public accommodation and Posey's actions violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, 2000e. (Doc. 135). In reply, defendants argue that plaintiff did not present a Title VI claim in his original complaint, he does not bring a federal question claim under 42 U.S.C. § 1983 against the UCMC defendants, and his complaint does not satisfy the $75,000 jurisdictional threshold under 28 U.S.C. § 1332(a)(1). (Doc. 137).

### 1. Breach of contract

The complaint as amended does not state a claim against the UCMC defendants based on a contract theory of recovery. To prove a breach of contract under Ohio law, a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff.[4] *Avis Rent a Car System, LLC v. City of Dayton, Ohio*, Nos. 3:12-cv-399, 3:12-cv-405, 2013 WL 3863911, at *9 (S.D. Ohio July 24, 2013), *aff'd sub nom. Avis Rent-A-Car System, Inc. v. City of Dayton, Ohio*, 581 F. App'x 479 (6th Cir. 2014) (citing *Doner v.*

---

[4] Defendants generally analyze any possible state law claims alleged by plaintiff under Ohio law. (*See* Doc. 130).

*Snapp,* 649 N.E.2d 42, 44 (Ohio App. 2nd Dist. 1994)). A party breaches a contract if it "fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions." *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 762 (6th Cir. 2008) (citing *Jarupan v. Hanna*, 878 N.E.2d 66, 73 (Ohio App. 10th Dist. 2007)). A contract "includes every description of agreement or obligation, whether verbal or written, whereby one party becomes bound to another . . . to perform omit to do a certain act." *See Terex Corp. v. Grim Welding Co.,* 568 N.E.2d 739, 740, syll. ¶ 1 (Ohio App. 9th. Dist. 1989). The elements of a valid contract include an offer, acceptance, mutual assent, and consideration, and the parties must have a meeting of the minds on the essential contract terms. *Kostelnik v. Helper,* 770 N.E.2d 58, 61 (Ohio 2002).

The complaint as amended does not sufficiently allege the first element of a breach of contract claim, which is the existence of a contract. Plaintiff has not submitted a copy of the UCMC Patient Bill of Rights or cited material provisions of the document. The facts as alleged do not permit a finding that the UCMC Patient Bill of Rights was a contractual agreement between plaintiff and UCMC that bound all UCMC employees, including security employees, to specific terms.

In addition, the facts alleged in the complaint as amended do not permit a finding that the UCMC defendants breached the terms of the Patient Bill of Rights. Plaintiff alleges that the UCMC defendants violated his rights under the Patient Bill of Rights by "refusing to allow [him] to participate in his care plan, as prescribed by his Primary Care Doctor," and "[r]efusing to call [him] by his requested title. . . ." (Doc. 3 at 3). Plaintiff's bare allegation that defendants refused to call him by his requested title is insufficient to state a claim for breach of contract. Plaintiff does not allege what promises the Patient Bill of Rights made with respect to the right to be

12

addressed by a requested title, what request or requests plaintiff made in this regard, how defendants breached their promise to plaintiff, and what damages plaintiff suffered as a result of defendants' alleged breach.

Further, although plaintiff claims that UCMC denied him the opportunity to participate in his plan of care, plaintiff makes allegations in the amendment to the complaint that contradict his claim. Plaintiff alleges in the amended complaint that he asked to go outside after St. Blanchard and Caudill came to his hospital room because his blood pressure had spiked and his primary care physician had advised him he could lower his blood pressure by walking. (Doc. 72, p. 4). Plaintiff indicates that he was granted permission to go outside at that time and again the following day. (*Id*.). Plaintiff states that he encountered Posey while outside "participating in his healthcare, as the 'UCMC' Patient Bill of Rights allows. . . ." (*Id*.). These allegations, accepted as true and construed liberally in plaintiff's favor, belie plaintiff's claim that UCMC violated its Patient Bill of Rights by denying him the opportunity to participate in his health care by walking to lower his blood pressure as his primary care physician had advised. Although plaintiff alleges that Posey verbally abused plaintiff when he encountered him outside walking and threatened plaintiff if he did not go back inside, plaintiff has not stated sufficient facts to show Posey was contractually bound to refrain from this behavior and to allow plaintiff to walk outside. Thus, the complaint as amended does not support a finding that the UCMC defendants can be held liable for violating plaintiff's rights under the UCMC Patient Bill of Rights based on a contract theory of recovery.

**2. Intentional infliction of emotional distress**

The UCMC defendants argue that they also cannot be held liable to plaintiff under a tort theory for intentional infliction of emotional distress. The elements of a claim for intentional

infliction of emotional distress in Ohio are: "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it." *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio App. 1st Dist. 1997). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Mowery v. Columbus*, No. 05AP-266, 2006 WL 620902, at *13 (Ohio App. 10th Dist. Mar. 14, 2006) (citing *Yeager*, 453 N.E.2d at 671).

Insofar as plaintiff seeks to hold the UCMC defendants liable in tort, plaintiff's claims must be dismissed. Plaintiff alleges his condition worsened and he suffered mental anguish as a result of defendants' actions. (Doc. 3 at 3). However, plaintiff does not allege that UCMC engaged in conduct that could conceivably be construed as actionable under an intentional tort theory. Nor do plaintiff's allegations against Posey rise to the level of an intentional tort. Plaintiff alleges that defendant Posey "rudely accosted" plaintiff when he was outside walking, called him "crazy," and "threatened [plaintiff] physically [] if [he] did not return to his room" because the two had a personal grievance that dated back more than 20 years. (Doc. 3 at 3; Doc. 72 at 4, 5). Accepting plaintiff's allegations as true, Posey engaged in behavior that was highly unprofessional. However, his behavior does not amount to more than "insults, indignities, [and] threats" as required to establish an intentional tort claim. *Mowery*, 2006 WL 620902, at *13.

### 3. Plaintiff's rights under federal law

The complaint as amended does not state a claim to relief against the UCMC defendants

for a violation of plaintiff's rights under federal law. Plaintiff alleges in his response to the Rule

12(c) motion that his claims fall under Title VI, 42 U.S.C. §§ 2000d, 2000e. (Doc. 135).

Plaintiff appears to premise his Title VI claim on § 2000d, which states:

> No person in the United States shall, on the ground of race, color, or national
> origin, be excluded from participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity receiving Federal
> financial assistance.

42 U.S.C. § 2000d. In support of his Title VI claim, plaintiff alleges for the first time in response

to defendants' Rule 12(c) motion that UCMC receives federal funding and that Posey called

plaintiff the "'n-word' twice" while "cursing and shouting obscenities" and threatening him.

(Doc. 135 at 3). Plaintiff has attached a sworn statement to his response in which he asserts that

Posey "called [him] racial and homophobic slurs." (Doc. 135-2, ¶ 3). Plaintiff also states that

while undergoing a cardiac procedure in 2015 by "'UCMC' West Chester," the "'UCMC' West

Chester" campus medical team informed plaintiff that the procedure was in conjunction with a

federally funded medical study on cardiac care. (Doc. 135-2, ¶ 5). Plaintiff has attached an

unauthenticated record of a hospitalization for chest pain from February 22-23, 2015, at "WCH

Main Hospital" in West Chester, Ohio. (Doc. 135-1).

In their reply, defendants assert that plaintiff has not addressed the issues they raised in

their Rule 12(c) motion but instead plaintiff raises a Title VI claim that was not presented in his

original or amended complaint. (Doc. 137). Defendants argue that plaintiff improperly raised

this claim for the first time in response to their motion for judgment on the pleadings; the claim

involves a different entity than UCMC and a different date than the date of the incidents at issue

in this lawsuit; and plaintiff has attached a sworn statement to support the claim, which cannot be considered in connection with a Rule 12(c) motion. (*Id*.).

Plaintiff is not entitled to pursue a Title VI claim first raised in his response to the motion for judgment on the pleadings. Plaintiff did not present a Title VI claim or the facts he alleges in support of the claim in the original complaint as amended. (Docs. 3, 72). Plaintiff did not previously allege that he was participating in a federally funded program at UCMC while hospitalized there in September 2015 or that he was discriminated against while participating in that program. Nor did plaintiff previously allege that Posey called him "racial and homophobic slurs." (Doc. 135-2, ¶ 3). Plaintiff would have been aware of this allegation when he filed the original and amended complaints, so there is no valid reason for omitting the allegation. The Court cannot consider plaintiff's Title VI claim and these supporting factual allegations first raised in response to defendants' Rule 12(c) motion. *See Johnson v. Metro. Govt. of Nashville and Davidson County, Tenn.,* 502 F. App'x 523, 541-42 (6th Cir. 2012) (although the plaintiff's response to the motion to dismiss expanded the claims, the court's review was limited to the facts and legal claims as raised in the pleadings) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.34 ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")). *See also Montesi v. Nationwide Mut. Ins. Co.,* 970 F. Supp.2d 784, 792 (W.D. Tenn. 2013) ("new dates or facts in [the plaintiff's] response cannot remedy a pleading deficiency"); *Jocham v. Tuscola Cnty.,* 239 F. Supp.2d 714, 732 (E.D. Mich. 2003) (holding that "the plaintiffs may not amend their complaint through a response brief"). Even if

plaintiff's allegations first made in response to the motion to dismiss were properly before the Court, the alleged facts have no apparent relationship to plaintiff's claims in this case. Rather, those allegations relate to plaintiff's participation in a medical treatment program at a different hospital in February 2015, months before the September 2015 incidents that gave rise to his complaint. Thus, plaintiff is not entitled to add to this case a Title VI claim and new supporting allegations which he first raised in his response to the UCMC defendants' Rule 12(c) motion.

### 4. Conclusion

Plaintiff has not presented arguments to show he has a claim against the UCMC defendants under any other theory of recovery based on the facts alleged in the original complaint as amended. Thus, plaintiff's claims against the UCMC defendants must be dismissed under Fed. R. Civ. P. 12(c) for failure to state a claim to relief.[5]

## IV. Defendant Conway's motion for protective order/plaintiff's motion to strike

Defendant Conway moves for a protective order that would require plaintiff to take the depositions of Conway and other attorneys with the Kentucky Attorney General's Office by written question instead of orally. (Doc. 132). Conway alleges that plaintiff is a convicted felon with a violent past who has a history of verbally abusing and harassing defendants; it is unlikely that plaintiff can pay the costs of an oral deposition based on the financial information he has submitted in this lawsuit and in the numerous other lawsuits he has filed since the start of this case; and Conway has no personal knowledge of the events that form the basis for the complaint.

In response, plaintiff contends that defendant Conway and Long should be required to

---

[5] In light of the resolution of plaintiff's claims against the UCMC defendants for failure to state a claim to relief, the Court need not address defendants' allegation that the Court lacks subject matter jurisdiction over plaintiff's claims against them because his alleged damages do not satisfy the jurisdictional minimum for claims brought under the Court's diversity jurisdiction.

appear for their depositions at the Potter Stewart United States Courthouse in Cincinnati.[6] (Doc.

134). Plaintiff alleges he does not pose a threat to Conway or any individual in the Kentucky

Attorney General's Office, and he asserts he can assume the costs for Conway to travel to

Cincinnati for his deposition. In addition to his response to the motion for a protective order,

plaintiff has filed a motion to strike Conway's motion because it purportedly includes a false

factual statement about a criminal charge to which plaintiff pled. (Doc. 136).

Conway argues in reply that plaintiff does not dispute he sent harassing communications

to the Kentucky Attorney General's Office over the course of many months. (Doc. 138).

Conway further asserts that plaintiff does not deny that Conway had no personal knowledge of

the facts underlying this litigation prior to the date plaintiff filed the lawsuit. Conway also

contends that plaintiff has not provided evidence to show he has sufficient income to afford the

costs of an oral deposition. Conway alleges that plaintiff has not given any reason why he

cannot proceed against Conway by means of written discovery, which Conway asserts is the

preferred method of obtaining discovery from him in light of the security concerns raised by

plaintiff's allegedly harassing behavior and his apparent inability to pay the costs associated with

an oral deposition. Conway also opposes plaintiff's motion to strike as unfounded. (Doc. 139).

**1. Motion to strike**

Plaintiff moves the Court to strike Conway's motion for a protective order on the ground

Conway falsely stated that plaintiff "is a convicted felon with a violent history" and mentioned a

"conviction" against plaintiff that involves a 2002 charge to which plaintiff actually pled "no

---

[6] Long currently serves as the Director of the Consumer Protection Division of the Kentucky Attorney General. (Doc. 132-2, Exh. B, Long Aff.). The motion for a protective order is moot as it relates to Long in light of the Court's June 16, 2017 Order finding that: "To the extent Benjamin Long has information relevant to plaintiff's claims, plaintiff has the options of traveling to Frankfort, Kentucky to depose Mr. Long in person, making arrangements to take Mr. Long's deposition remotely, or taking Mr. Long's deposition by written questions. Plaintiff will be responsible for the costs if he chooses to depose Mr. Long in person or remotely." (Doc. 141 at 1-2).

contest." (Doc. 136 at 2; Exhs. 1-2). In response, Conway asserts that he relied on a 2012 newspaper article attached to his motion that reported plaintiff had pled guilty to another charge in 2003, which plaintiff does not dispute. (Doc. 139).

Courts have the inherent power to strike documents or portions of documents. *See Zep Inc. v. Midwest Motor Supply Co.*, 726 F. Supp.2d 818, 822 (S.D. Ohio 2010) (citing *Anthony v. BRT Auto. Sealing Sys.*, 339 F.3d 506, 516 (6th Cir. 2003)). The Court declines to exercise its inherent power here to strike Conway's motion for a protective order. In determining whether a protective order is warranted, it is not appropriate to consider hearsay statements and exhibits pertaining to criminal charges against plaintiff that date back to 2003 which are unrelated to the incidents at issue in this lawsuit. However, it is not necessary to strike the motion for a protective order for this reason because the Court can consider the motion without taking those statements and exhibits into account. The Court therefore denies plaintiff's motion to strike but will disregard Conway's representations and exhibits related to plaintiff's past criminal pleas and convictions in deciding the motion for a protective order.

### 2. Motion for a protective order

A party has the right to depose other parties and witnesses. Fed. R. Civ. P. 30. However, the party who notices and takes the deposition bears the costs associated with taking the deposition and obtaining a transcript for use as part of the lawsuit. *Id*. These costs are not waived for litigants proceeding *in forma pauperis*. *Dujardine v. Michigan Dept. of Corrections*, No. 1:07-cv-701, 2009 WL 3401172, at *1 (W.D. Mich. Oct. 19, 2009) (Brenneman, M.J.) (collecting cases); *see also Dearing v. Mahalma*, No. 1:11-cv-204, 2012 WL 524438, at *1 (S.D. Ohio Feb. 16, 2012) (Bowman, M.J.).

The party noticing the deposition may set the place for another party's deposition, subject to the Court's power under Fed. R. Civ. P. 26(c) to grant a protective order designating a different place or different method of discovery for "good cause" so as to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." *Scooter Store, Inc. v. Spinlife.com, LLC*, No. 2:10-cv-18, 2011 WL 2118765, at *1 (S.D. Ohio May 25, 2011) (Deavers, M.J.). The party seeking a protective order bears the burden of establishing good cause and a specific need for the protection sought. *Schorr v. Briarwood Estates Ltd. Partn.*, 178 F.R.D. 488, 491 (N.D. Ohio 1998) (citing *Landry v. Air Line Pilots Ass'n. Int'l AFL–CIO,* 901 F.2d 404, 435 (5th Cir. 1990)). The entry of a protective order rests in the sound discretion of the Court. *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 227 (6th Cir. 1996).

Defendant Conway has not shown that plaintiff should be precluded from taking his oral deposition on the grounds Conway had no personal knowledge of plaintiff's social media postings, his websites, and comments he made about Conway prior to this litigation and Conway allegedly was not involved in the incidents leading to the lawsuit. (Doc. 132-7, Exh. G). Because Conway is a defendant in this case, plaintiff is entitled to depose him to probe the extent of his knowledge and involvement, if any, in the case. *See* Fed. R. Civ. P. 30. The cases Conway cites to support his argument to the contrary are distinguishable. (Doc. 138 at 3). In *Graves v. Bowles*, 419 F. App'x 640, 645 (6th Cir. 2011), the individual to be deposed - a mayor - was not a defendant, and the district court concluded that the mayor could not provide any information relevant to the plaintiff's claims. Similarly, in *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001), the individual to be deposed was a Congressman who was not named as a defendant in the lawsuit involving private individuals. Finally, in *Watson v. City of Cleveland*, 202 F. App'x 844, 852 (6th Cir. 2006), the individual to be deposed was a mayor named as a

defendant, but the district court found the mayor was involved in the case only to the extent he supervised city employees, he had little information related to the plaintiff's claims, and all of the information the plaintiff sought was available from another source. In contrast, plaintiff alleges that Conway played a direct role in the incidents giving rise to this lawsuit. (*See* Doc. 72). Whether plaintiff's allegations against Conway have merit is not a determination that the Court can make in connection with a discovery motion. Plaintiff may or may not be able to substantiate his allegations against Conway through discovery, but he is entitled to take the oral deposition of Conway, a defendant in this lawsuit, to question him about facts relevant to the lawsuit.

Plaintiff's past communications with the Kentucky Attorney General's Office likewise do not constitute good cause for precluding plaintiff from taking Conway's oral deposition altogether; however, those communications do raise legitimate security concerns and warrant restricting the location where the oral deposition can take place. Evidence Conway has submitted in support of his motion shows that beginning in February 2015, plaintiff sent emails to employees of the Kentucky Attorney General's Office "accusing them of racism" and using "hostile and abusive language"; plaintiff left "hostile voicemail messages" at the Attorney General's Office asking to speak to certain attorneys in the office; and plaintiff posted information on social media that was concerning to the Attorney General's Office staff. (Doc. 132-2, Exh. B, Long Aff., ¶¶ 5, 8, 9). While plaintiff points out that he was never arrested or cited for his communications with defendants or his social media posts related to the Attorney General's Office (Doc. 134), the Court agrees with Conway that this does not detract from the concerning nature of the communications. The Court will therefore address Conway's security

concerns by requiring plaintiff to use the Alternative Dispute Resolution (ADR) Suite in the Potter Stewart United States Courthouse in Cincinnati to conduct Conway's oral deposition.

Conway alleges that in addition to security concerns, there are serious questions as to whether plaintiff has the financial means to bear the costs of deposing Conway. (Doc. 132). Conway notes that plaintiff has filed numerous cases *in forma pauperis* since instituting this lawsuit, and his most recent *in forma pauperis* application submitted to the United States District Court for the Eastern District of Kentucky in January 2017 showed he had no sources of income, he had $3.00 cash on hand in a checking/savings account, he owes $1,300.00 in monthly support, and he has student loans that total $80,000.00. (Doc. 132-9, Exh. I). Plaintiff alleges in response that as of June 2, 2017, he had been working as an umpire for youth baseball and softball and would be able to cover Conway's expenses of traveling to the federal courthouse in Cincinnati, which plaintiff estimates to be $85.00 roundtrip. (Doc. 134). Conway alleges in reply that plaintiff has not provided evidence to show he has sufficient income to afford the costs of the depositions, especially given his significant child support and loan obligations reported in his court filings. (Doc. 138).

Conway is not entitled to a protective order based on the likelihood that plaintiff will not be able to pay the costs associated with deposing him. The Court has previously advised plaintiff that the party who notices and takes a deposition "bears the costs associated with taking the deposition and obtaining a transcript for use as part of the lawsuit," which are not waived for litigants proceeding *in forma pauperis*. (*See* Doc. 127 at 1, citing Fed. R. Civ. P. 30; *Dujardine*, 2009 WL 3401172, at *1; *Dearing*, 2012 WL 524438, at *1). These costs include the costs of recording the deposition testimony by "audio, audiovisual, or stenographic means." Fed. R. Civ. P. 30(b)(3)(A). If plaintiff is able to bear these costs, he is entitled to notice Conway's

deposition to be taken at the Potter Stewart United States Courthouse. If plaintiff is unable to pay these costs, he is free to use the alternative methods provided in the Federal Rules to obtain discovery from Conway.[7]

Thus, defendant Conway has not carried his burden of establishing good cause for a protective order that precludes plaintiff from taking his oral deposition. However, Conway has shown good cause for a protective order that designates the place where his oral deposition must take place. The Court therefore grants the motion for a protective order in part and restricts plaintiff to conducting Conway's oral deposition at the location designated by the Court.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's motion for leave to file a second amended complaint (Doc. 143) is **DENIED**.

2. The UCMC defendants' motion for judgment on the pleadings (Doc. 130) is **GRANTED.** Defendants UCMC, UCMC security staff, and Mike Posey are **DISMISSED** from the case.

3. Defendant Conway's motion for protective order (Doc. 132) is **GRANTED** in part. Plaintiff may take defendant Conway's oral deposition but the deposition must take place in the Alternative Dispute Resolution Suite of the Potter Stewart United States Courthouse in Cincinnati, Ohio, and arrangements to use the ADR Suite must be made through the Court.

4. Plaintiff's motion to strike defendant Conway's motion for protective order (Doc. 136) is **DENIED**.

Date: 8/24/17

Karen L. Litkovitz
United States Magistrate Judge

---

[7] Plaintiff has also been advised that he "may avoid the expense of an oral deposition by using alternatives provided under the discovery rules, including written interrogatories (Fed. R. Civ. P. 33), requests for production of documents (Fed. R. Civ. P. 34), and requests for admission (Fed. R. Civ. P. 36). A party may also take a deposition by telephone or other remote means (Fed. R. Civ. P. 30) or by written question (Fed. R. Civ. P. 31)." (Doc. 127 at 2).